KNOX *vs.* HIGGINBOTHAM.

1. Where a wife joined with her husband in a mortgage to secure money borrowed by him for the purpose of removing encumbrances from the land mortgaged, and made therein a waiver of dower, this did not prevent her from obtaining dower in the land after the death of her husband.
2. While the right of dower is highly favored and carefully guarded by the courts, yet if the widow should practice fraud upon innocent purchasers, and induce them to become purchasers of land subject to her dower, under the impression that they were getting property free from such encumbrance, she would be estopped from setting up her right to dower in such land. But in order to avail himself of an estoppel on such grounds, the purchaser must have acted honestly and fairly, must have been a *bona fide* purchaser, in the full sense of that term, and free from practices and devices tending to lead the widow to acts and declarations barring her right.

October 13, 1885.

Husband and Wife. Dower. Waiver. Fraud. Estoppel. Before Judge HUTCHINS. Walton Superior Court. February Term, 1885.

Reported in the decision.

J. H. FELKER· RAY & WALKER, for plaintiff in error.

McHENRY & McHENRY; JAMES F. ROGERS, for defendant.

HALL, Justice.

This was an application for dower and a traverse by one of the creditors of the husband, denying the widow's right,

filed upon the return of the commissioners appointed to lay off and assign the dower. Two grounds were relied on to defeat the dower:

1st. That the widow, in the life of the husband, joined him in an obligation to the caveator for money advanced to take up certain executions about to be levied upon the land, and which would have sold it in his lifetime, and thus defeated the applicant's right to dower; that this debt was secured by a mortgage upon a portion of his land, in which the wife also joined, and that a waiver of dower was therein made and consented to by her.

2nd. That she was estopped from setting up dower in the land mortgaged, and which was purchased by the mortgagee for one Jay, by her repeated declarations that she would not seek dower therein, and by her encouragement to Jay and the mortgagor to purchase the same at the sale had under the mortgage *fi. fa.*

By consent of counsel, the issues, both of law and fact, were submitted to the determination of the presiding judge without a jury, upon an agreed statement of facts. The deceased died seized of two tracts of land, the larger of which, called the home place, was unencumbered, but the commissioners assigned dower in the tract that was mortgaged. The judge found in favor of the return of the commissioners, and gave judgment for the dower.

A motion was made for a new trial upon various grounds, which was overruled and denied, and thereupon the caveator, Knox, took his bill of exceptions and sued out a writ of error, alleging—

(1.) That the finding of the judge was contrary to evidence and without evidence to support it.

(2.) That it was decidedly and strongly against the weight of evidence.

(3.) That it was contrary to law and the principles of justice and equity.

(4.) That there was error in ruling that the doctrine of estoppel did not apply so as to defeat applicant's right to dower under the facts of the case.

(5.) In ruling that the waiver claimed was not binding and sufficient in law, and that the same was not good.

(6.) That there was error in adjudging that the acts and representations of the applicant did not amount to a fraud upon caveator, he having acted upon the same.

1. We will consider first the question raised by the 5th ground of this assignment, as to the validity of the waiver made by the applicant, while covert, jointly with her husband, in the mortgage executed on the land upon which the dower was assigned. That this was perfectly correct, we entertain no kind of doubt. It is expressly enacted that "no lien created by the husband in his lifetime, though assented to by the wife, shall in any manner interfere with her right to dower." Code, §1769. · Language could scarcely be more comprehensive and explicit.

Had this been a waiver in a mortgage for the purchase money, executed simultaneously with the deed conveying the land by the mortgagee to the mortgagor, then, though quite unnecessary, to defeat the claim of dower, such a waiver might not have been invalid, and might have afforded some slight evidence of a purpose not to insist upon dower. Act of 1875, p. 100; Code, §1763(a). There is only one other instance in which the like rule obtains, and which is set forth in the same section of the Code taken from this act, but it is sufficient to say that there are no facts in this case bringing it within the rule thus established.

2. The other assignments of error, which may be considered together as relating to the same subject, present a somewhat more difficult question.

There can be little doubt that the right to dower is highly favored and carefully protected by the law; but while this is true, it is equally clear that it does not authorize a widow to practice fraud upon innocent persons, and to induce them to become purchasers of land subject to her dower, under the impression that they are getting· property free from such an incumbrance. In a case where

such acts and declarations were clearly established by proof, she would be estopped from setting up a right to which she would otherwise be entitled. Code, §§2966, 3753; 2 Scribner on Dower, 266, *et seq.* But in order to avail himself of an estoppel, the purchaser must have acted honestly and fairly; he must be a *bona fide* purchaser in the full sense of that term, and must be free from practices and devices which would tend to lead the dowress to acts and declarations barring this highly favored right. The party who would shield himself from the consequences of a fraud, and invoke an estoppel for his protection, should be careful to act in such manner as to make it appear that he contributed nothing to its consummation. To entitle himself to this protection, he should be an unsuspecting victim, rather than a willing dupe. 2 Scribner *ut sup.*, especially pages 268, 272, both inclusive, and citations.

The judge who presided in this case does not seem to have refused the application of this doctrine of estoppel to proper circumstances; all that he held was that it would not apply, so as to defeat the applicant's right to recover, under the facts before him; and had this issue been before a jury, he doubtless would have submitted it to them to determine, with proper instructions as to the law applicable to it, and would have refrained from the expression of the opinion he gave as to the force and effect of the testimony. To guard against misapprehension upon this subject, it must be borne in mind that he was, by the express consent of the parties, exercising the functions of both judge and jury. He did not have to indulge in strained inferences to reach the conclusion he did upon this agreed statement of facts, for there are several suspicious circumstances set out in this statement, and the general aspect of the case is somewhat forbidding. It does not appear that the applicant was present when this sale was made to the caveator, or that she indulged in acts or declarations to encourage bidders in the impression that they were buying property free from the incumbrance of

her dower.  By the statement, it does appear that she made such declarations both to caveator and to Jay, who seems to have been the confederate of the former from the inception to the close of this business, and who also appears to have been quite active in procuring her to make declarations that might be destructive of her interests.  Not only this, he rented from her what was supposed to be her dower in the home place, before she had made application for it and before it had been assigned.  The foreclosure of the mortgage was hurried up, and it was effected before the expiration of twelve months from the grant of administration upon the husband's estate, and this, too, by the connivance, if not by the direct consent, of an administrator, who was removed from the trust in consequence of his illegal conduct in managing the affairs of the estate.  It is not without marked significance that, if the widow committed the acts, and made the declarations attributed to her, she did not do so freely and with a full knowledge of her rights, but under the belief that she was bound by the waiver made in the lifetime of her husband. The inference that this may have been a part of a scheme, followed up closely by the admissions made at the acts she was induced to perform by her professed friends, though covert adversaries, to lure her into unguarded expressions and conduct deeply affecting her rights, is not altogether strained or unwarranted.  That such deductions may have been legitimately drawn by a jury we think quite probable, and in doing so, we could not say that they had violated any duty, or disregarded the rights of the parties, especially where the presiding judge was satisfied with their finding.  The well-settled rule of this court upon the subject of granting or refusing new trials in cases of a less doubtful character than the present, forbids our interference with this finding   We could not, if we would, and would not, if we could, interpose to disturb it, believing as we do that it is sustained, though perhaps not absolutely required, by the facts in evidence.

Judgment affirmed.